Vacated and remanded by published opinion. Judge Traxler wrote the majority opinion in which Judge Diaz joined. Judge Floyd wrote an opinion concurring in part and concurring in the judgment.
TRAXLER, Circuit Judge:
Saber Healthcare Holdings, LLC, sits at the top of a family of wholly owned limited-liability companies that own and operate dozens of assisted-living facilities and nursing homes in several states, including North Carolina. Current and former residents of one of Saber’s North Carolina assisted-living facilities brought a putative class action in North Carolina state court against Saber Healthcare Holdings and certain of its subsidiaries, alleging that the defendants failed to deliver the contractually promised care and failed to comply with certain state law requirements. After the defendánts removed the case to federal court, the district court granted the plaintiffs motion to remand the cáse to state court, concluding that a forum-selection clause in the residents’ contracts required the case to proceed in state court. The defendants appeal, arguing that the case was properly removed under, the Class Action Fairness Act of 2005 (“CAFA”), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28, United States Code), and that, in any event, the forum-selection clause does not prohibit removal. As we will explain, we vacate and remand for further proceedings and factual development on the question-of whether all of the defendants are bound by the forum-selection clause contained- in the contracts executed by the plaintiffs.

⅜—i

The defendants in this case are Saber Healthcare Holdings, LLC (“Saber”); Saber Healthcare Group, LLC; Franklin Operations, LLC; Smithfield East Health Holdings, LLC; and Queen City AL Holdings, LLC. Saber, is the sole member of each of the other defendant. LLCs.
As is relevant to this case, Saber and its related companies operate three assisted-living facilities in North Carolina: Franklin Manor Assisted Living Center, which is operated by Ffanklin Operations, LLC, and located in Franklin County; Gabriel Manor Assisted Living Center, which is operated by Smithfield East Health Holdings, LLC, and located in Johnston County; and The Crossings at Steele Creek, Which is operated by Queen City AL Holdings, LLC, 'and located in "Mecklenburg County, Each facility requires its residents to sign an “Assisted Living Residency Agreement,” which includes a forum-selection clause providing that “the county in which the Facility is located shall be the sole and exclusive venue for any dispute between the parties, including, but not lim *672 ited to, litigation, special proceeding, or other proceeding between the parties that may be brought, arise out of or in connection with or by reason of this Agreement.” J.A. 160.
The plaintiffs are the representatives of three then-current and former residents of Saber facilities—Jeanne Bartels, Bernice Pfohl, and Claire Murphy. Bartels was a resident of • Franklin Manor for a few weeks in October and November 2015, and Pfohl was a resident of Franklin Manor from February 2014 through August 2015. Murphy was a resident of Franklin Manor from April 2015 through January 1, 2016. After spending a month in a rehabilitation hospital, Murphy was a resident of Gabriel Manor from February 4 through April 21, 2016. On April 21, 2016, Murphy returned to Franklin Manor, where she resided until sometime after this action was filed.[1]

The plaintiffs filed this action' on May 9, 2016, in Franklin County, North Carolina. The plaintiffs alleged that the defendants are all alter egos of each other and that they failed to provide the level of staffing necessary to satisfy North Carolina statutory requirements or to meet the basic needs of its residents. According to the plaintiffs, the defendants deliberately chose to understaff the facilities in order to “increase profits at the expense of its residents with Alzheimer’s and dementia.” J.A. 38.
The plaintiffs sought a preliminary injunction, and the hearing on that motion took place on May 16 and 19, 2016, in courthouses located in Granville County and Wake County. At the conclusion of the hearing, the state court indicated that it would grant the injunction and appoint a monitor to ensure compliance with state law, but the court made it clear that the injunction would be effective on entry of a written order. See D. Ct. docket entry #34, exh. 2, pp. 5-6 (“[C]ome up with an order that memorializes that and I’m looking at it. and either sign it or modify it as I think is appropriate and I’ll make it effective when the order is signed.” (emphasis added)). On May 24, the Saber defendants removed the case to federal court. A few days after removal, the state court entered a written order granting , the injunction. The order stated that the injunction “was entered in open court on May 19, 2016 and is signed ... on this, the 27th day of May 2016.” J.A. 234. Recognizing that the case had been removed, the state court stayed the injunction “unless and until the case is remanded to this court for further proceedings.” J.A. 235.
The plaintiffs subsequently moved to remand, arguing that the forum-selection clauses in the contracts required the action to be prosecuted in Franklin County. Because there is no federal courthouse in Franklin County, the . plaintiffs contended that the defendants were contractually precluded from removing the action. The defendants argued that the absence of a federal courthouse in Franklin County did not preclude removal and that, in any event, the only defendant bound by the forum-selectión clause was Franklin Operations, LLC. Because- CAFA authorizes removal by a single defendant and does not require the consent of other defendants, any of the other defendants were free to remove the case.
The district court granted the motion to remand. The court concluded that the forum-selection clause required the action to proceed in Franklin County and that the absence of a federal courthouse in Frank *673 lin County precluded removal. The court rejected the defendants’ argument that only Franklin Operations, LLC, was bound by the forum-selection clause, noting that the plaintiffs alleged that the entities were alter egos and that Saber was the sole member in each entity. This appeal followed.
II.
Before proceeding to the merits, we pause to address our jurisdiction over this appeal. Subject to certain exceptions, appellate review of orders remanding removed cases to state court is prohibited. See 28 U.S.C. § 1447(d). The defendants therefore proceeded under the Class Action Fairness Act and timely sought permission from this court to appeal the remand order. See 28 U.S.C. § 1453(c) (“[A] court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order.”).
The general statutory prohibition against appeals of remand orders, however, applies only where the remand was based on lack of subject-matter jurisdiction or on a timely raised defect in. the removal procedure. See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127-28, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008). In this case, the district court did not remand because it lacked subject-matter jurisdiction or because of any defect in the removal procedure.[2] Instead, the court remanded because it concluded that the forum-selection clause effected a waiver of the defendants’ right to remove the case to federal court. Consistent with the approach taken in other circuits, this court has concluded that a remand based on enforcement of a forum-selection clause “does not fall within the general prohibition of appellate review for remand orders pursuant to 28 U.S.C. § 1447(d)” and thus is “reviewable on appeal.” FindWhere Holdings, Inc. v. Sys. Env’t Optimization, LLC, 626 F.3d 752, 755 (4th Cir. 2010) (collecting cases). The order at issue in this case, therefore, is subject to appellate review under ordinary principles.[3]

*674 III.
We turn now to the merits of this appeal.- There is no question that under CAFA, a'single defendant can remove a case without the consent of the other defendants. See 28 U.S.C. § 1453(b) (“A class action ... may be removed by any defendant without the consent of all defendants.” (emphasis added)); Lowery v. Ala. Power Co., 483 F.3d 1184, 1221 (11th Cir. 2007) C‘[A]ny one defendant authorized under CAFA to remove the plaintiffs’ claims against that defendant ... may remove the- action as a whole, regardless of whether other defendants in the action would be authorized to remove their claims.”).- Removal was therefore proper under CAFA if any one of the defendants was authorized to remove the case. Accordingly, the questions we must answer :are whether the forum-selection, clause prohibited removal, and, if so, whether all defendants are bound by the clause.
.A.
As noted, the forum-selection clause contained in the residency agreements states that “the county in which the Facility is located shall be the sole and exclusive venue "for any dispute between the parties, including, but not limited to, litigation, special proceeding, or other proceeding between the parties that may be brought, arise out of or in connection with or by reason of this Agreement,” J.A. 160.
The plaintiffs contend- that under the plain language of this clause, all litigation springing from the contractual relationship must be pursued in the county where the facility is located. Thus, if there is a federal courthouse in that county, then removal would be consistent with the contract, because the litigation would still be proceeding in the required county. But if there is no federal courthouse in the designated county, then removal would be inconsistent with the contract, because the litigation would of necessity be proceeding in a different county. The defendants, however, argue that the clause does not preclude removal because the contract does not limit venue to the courts of North Carolina— language that is generally understood to require the case to proceed in state court. See FindWhere, 626 F.3d at 755, According to the defendants, the forum-selection clause should be understood as permitting removal to the federal .court with jurisdiction over-the specified county, regardless of whether there happens to be a federal courthouse physically located in that county. -
In our view, the plain language- of the forum-selection clause compels the conclusion urged by the plaintiffs. The clause states that the county where the facility is located “shall be the sole and exclusive venue” for resolution of disputes between the parties, which unambiguously requires the case to be resolved in Franklin County, North Carolina. Because there is no federal courthouse in the designated county, removal ■ of the case to federal court would mean that the dispute would be resoived in a county other than the one designated by the contract. To accept the defendants’ argument would require us to re-write the. clause to provide that “the sole and .exclusive venue for any dispute between the parties shall be the county in which the Facility is located, or the county in which a federal courthouse is located that has jurisdiction over the county in which the Facility is located.” This court, of course, may not re-write the contract; our role is limited to enforcing the contract as written.

*675 Although the defendants’ argument is supported by a few district court opinions, every circuit court to have addressed this issue has agreed with the plaintiffs. For example, in Yakin v. Tyler Hill Corp., 566 F.3d 72 (2d Cir. 2009), the forum-selection clause provided that “the venue and place of trial of any dispute that may arise out of this Agreement ... shall be in Nassau County, New York.” Id, at 74'. The defendant removed the state-court action to federal court, even though there was no federal courthouse in Nassau County. The Second Circuit affirmed the district court’s decision to remand the case:
We perceive no ambiguity in the forum selection clause. A reasonable person reviewing the statement “It is agreed that the venue and place of trial of any dispute that may arise out of this Agreement ... shall be in Nassau County, New York,” would necessarily conclude that the parties intended that litigation take place in an appropriate venue in Nassau County and that this commitment was not conditioned on the existence of a federal courthouse in that county.

Given that the forum selection clause contains only obligatory venue language, we will effectuate the parties? commitment to trial in Nassau County. Had there been a federal court located in Nassau County at the time of this_ litigation, remand would have been improper. Bat there, was none. In addition, contrary to Tyler Hill’s contention, no reasonable reading of the clause permits the interpretation that the parties had agreed to trial in Suffolk County or Brooklyn because those courthouses were within the Eastern District of New York, which spans an area including Nassau County. Had the parties intended to provide for that result, they could, of course, have drafted a different forum selection clause that communicated that intent. We are free only to interpret and enforce the clause as written.

Id. at 76-77 (emphasis added); accord Simonoff v. Expedia, Inc., 643 F.3d 1202, 1207 (9th Cir. 2011) (“[W]e hold that a forum selection clause that vests ‘exclusive jurisdiction and venue’ in the courts ‘in’ a county provides venue in the state and federal courts located in that county.” (emphasis added)); Alliance Health Grp., LLC v. Bridging Health Options, LLC, 553 F.3d 397, 400 (5th Cir. 2008) (“[T]he clause at hand, providing 'for venue in a specific county, permits venue: in either federal or state court, because a federal courthouse is located in that county.” (emphasis added)); Global Satellite Commc’n Co. v. Starmill U.K., Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) (“The contract provision, ‘Venue shall be in Broward County,’ .... is most reasonably interpreted to mandate venue in Broward County, and Broward County alone. The provision, however, does not designate any particular forum, such that a suit either in the Seventeenth Judicial District of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, both of which are located in Broward County, would satisfy the venue requirement.” (emphasis added)). Although the language of the clause in this case (loes not precisely mirror that in the eases cited above, we do not believe the difference in the contractual language requires a different interpretation, '
In support .of their argument, the defendants rely on our decision in FindWhere. In that case, the. parties were subject to a contractual forum-selection clause that required litigation to proceed “exclusively in ... the courts of the State of Virginia.” FindWhere, 626 F.3d at 754. After removal, the district court remanded the case to state court, agreeing with the plaintiffs *676 that the forum-selection clause precluded removal. Affirming the district court’s order, the FindWhere court explained the differences between forum-selection clauses that impose a geographical venue limitation and those that impose a sovereignty limitation:
[Fjorum selection clauses that use the term “in a state” express the parties’ intent as a matter of geography, permitting jurisdiction .in both the state' and federal, courts of the named state, whereas forum selection clauses that use the term “of a state” connote sovereignty, limiting jurisdiction over the parties’ dispute to the state courts of the named state.

Id. at 755 (internal alterations omitted). Because the forum-selection clause at issue required the litigation to proceed in the courts “of the State of Virginia,” we held that removal was'improper, as “federal courts are not courts ‘of the State of Virginia.” Id.

The defendants seém to read Find-Where as holding that where a geographically limited forum-selection clause is at issue, venue is always proper in either state or federal court. See Brief of Appellants at 24-25. We disagree. The court in FindWhere did' not hold venue was proper in state or federal courts in all cases involving geographically focused forum-selection clauses; the court held that where a forum-selection clause limits litigation to courts in a state, then the case can proceed in any court located in that state. See id. The holding in FindWhere is thus consistent with the holdings of the out-of-circuit cases cited above—forum-selection clauses using geographical limitations permit the case to be filed with any court, whether state or federal, that is located within the contractually described geographical boundary. In this case, the forum-selection clause is one focused on geography, not sovereignty. Accordingly, under the rule set out in FindWhere, this case is properly filed with and resolved by any court that is located in Franklin County. Because there is no federal court in Franklin County, the plain language " of the forum-selection clause precludes removal.
The defendants, however, insist that this reading of the clause does not “square[] with how North Carolina courts operate.” Brief of Appellants at 27. They note that the state judicial district encompassing Franklin County includes other counties and that pretrial proceedings on a case filed in Franklin County might sometimes be conducted in one of the other counties in the district. (Indeed, that happened in this case—hearings on the plaintiffs’ request for a preliminary injunction were conducted in two other counties.) Thus, because there is no guarantee under North Carolina practice that all proceedings in a case filed in Franklin County will actually occur in Franklin County, the defendants contend that the clause cannot be understood as limiting venue to the courts of Franklin County. We disagree.
The parties to the residency agreement must be presumed to have been familiar with the operation of the state court system when they agreed to the forum-selection clause. See, e.g., Fraternal Order of Police Lodge No. 89 v. Prince George’s Cty., 608 F.3d 183, 191 (4th Cir. 2010) (“[P]arties are presumed to contract against the backdrop of relevant law. ... ”). Accordingly, the parties to the Franklin Manor contracts agreed that disputes must be resolved in Franklin County, while at the same time recognizing that pretrial proceedings might take place in another county. Under these circumstances,-it is clear that the purpose of the forum-selection clause was to dictate which county court would have jurisdiction over the case as a whole, without regard to *677 which county courthouse might play host to a given hearing. That is, Franklin County may be the “sole and exclusive venue” for resolution of the dispute as a whole, as required by the contract, notwithstanding the fact that a few preliminary hearings might be held elsewhere. Indeed, the record here shows just that—the case retained its Franklin County flavor even when the hearing was held outside Franklin County. See J.A. 209 (“I’ve gotten commissioned by the chief justice to hold this hearing in Wake County even though it’s a Franklin County case.”). The operation of the North Carolina court system thus provides no basis for ignoring the plain language of the forum selection clause.
B.
The defendants argue that even if the forum-selection clause is properly read as requiring the litigation to proceed in state court, the plaintiffs are, for various reasons, not entitled to enforce it,
(1)
The defendants first contend that the plaintiffs waived the forum-selection clause by including claims against the Gabriel Manor and Crossings defendants, whose contracts require residents to sue in the counties where those facilities are located. The defendants contend that since the plaintiffs claim that all defendants must be bound by the Franklin Manor contract, then all defendants and plaintiffs would also be bound by the Gabriel Manor and Crossings contracts. The defendants therefore argue that the plaintiffs’ decision to proceed in Franklin County violates the conflicting forum-selection clauses of the Gabriel Manor and Crossings contracts. In the defendants’ view, the plaintiffs have not shown “why they should be entitled to insist upon enforcement of the Franklin Manor clause in particular, in derogation of the other Defendant facilities’ clauses.” Brief of Appellants at 36.
The plaintiffs are entitled to insist upon enforcement of the forum-selection clause of the Franklin Manor contracts because those are the contracts signed by the plaintiffs. The named plaintiffs do not sue the Gabriel Manor and Crossings defendants for breaching contracts the' plaintiffs did not execute; instead, the plaintiffs sue these defendants as alter egos of the defendants who breached the contracts the plaintiffs did execute—the Franklin Man- or contracts. At the time this action was filed, all of the plaintiffs were residents of Franklin Manor and had signed contracts requiring litigation to be pursued in Franklin County. Because none of the plaintiffs had an active contract with Gabriel Manor or Crossings, they could not be bound by forum-selection clauses in unexecuted form contracts.[4] The plaintiffs therefore did not breach an operative forum-selection clause, and the defendants’ argument on this point fails.
(2)
The defendants also contend that the plaintiffs waived the forum-selection clause by including non-contract claims in their complaint. The plaintiffs asserted a claim *678 for injunctive relief based on violations of N.C. Gen, Stat. § 131D-21, which sets out a. declaration of rights for residents of “adult care homes,” The Saber defendants argue that the statutory claim does not fall within the scope of. the forum-selection clause and that the plaintiffs therefore waived their rights under the forum-selection clause.
This argument is without merit. The Franklin Manor forum-selection clause applies to claims that “arise out of or in connection with or by reason of this Agreement.” J.A. 160 (emphasis added). The “in connection with” language broadens the scope of the clause beyond pure contract claims and extends it to “every dispute between the parties having a significant relationship to the contract regardless .of the label attached to the dispute.” J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (emphasis added); see Long v. Silver, 248 F.3d 309, 316 (4th Cir. 2001) (clause requiring arbitration of disputes “arising out of or in connection with” the contract between the parties had broad scope). The statutory declaration of rights imposes standards that an assisted-iiving facility must meet when providing services to its residents,, and it is the contract with the resident that obligates the facility to provide those services in the first instance. The claims that the Saber defendants violated the statute thus bear a significant relationship to the residency agreements and fall within the scope of the forum-selection clause. See Long, 248 F.3d at 318 (concluding that breach of fiduciary duty claim fell within scope of clause requiring arbitration of disputes connected with 1972 Agreement because “Long’s breach of fiduciary duty claim arises only by virtue of Long’s status as a shareholder, and the 1972 Agreement creates Long’s status as a shareholder”).
(3)
Finally, the defendants argue that the plaintiffs waiyed their right to enforce the forum-selection clause by. requesting and attending hearings that were held outside Franklin County, Again, we disagree.
A party may expressly waive a contractual right, or it may waive the right impliedly, through “acts- or conduct that naturally lead the other party to believe that the right has been intentionally given up.” Patterson v. Patterson, 137 N.C.App. 653, 529 S.E.2d 484, 492 (N.C. Ct. App. 2000) (internal quotation marks omitted). The intent to waive must - be clear, as conduct with ambiguous meaning, will not support a-waiver defense. See Hassett v. Dixie Furn. Co., 333 N.C. 307,425 S.E.2d 683, 687 (N.C. 1993).[5] In this case, the plaintiffs requested that the first preliminary-injunction hearing be held outside Franklin County (but within the same judicial district), and'they consented to the hearing continuing in another county outside the district. In the view of the defendants, that conduct amounts to a waiver of the -Franklin Manor forum-selection clause. As discussed above, however, the parties agreed to the forum-selection clause with the knowledge that, under North Carolina practice, preliminary hearings might be held outside FranWin County. Because the plaintiffs’ request for and consent to two out-of-county hearings in order to expedite their request for a preliminary injunction is in no way inconsis *679 tent with the forum-selection clause, the plaintiffs did not waive their right to enforce the clause.
IV..
Having concluded that the operative forum-selection clause precludes removal to federal court and that the plaintiffs did not waive their right to enforce the elaüse, we turn now to the question of which defendants are bound by the clause. As previously noted, unanimity is not required for removal under CAFA; a single defendant may remove a case. Accordingly, unless all of the Saber defendants are bound by the forum-selection clause contained in the Franklin Manor residency agreements, removal was proper.
The plaintiffs alleged in their amended complaint that all defendants are liable because each individual defendant is an alter ego of the other, and the complaint includes a list of factors relevant to the alter-ego analysis. See Glenn v. Wagner, 313 N.C. 450, 329 S.E.2d 326, 330-31 (1985) (listing factors relevant to alter-ego question). In granting the motion to' remand, the district court did not address the unilateral-removal issue, nor did it explicitly conclude, as a factual matter, that the various entities were alter egos of each other. Nonetheless, the court did find the plaintiffs’ alter-ego allegations sufficient to reject the defendants’ argument that the plaintiffs made the case removable by suing Saber entities who were not signatories to the residency agreements.
On appeal, the defendants contend that thé district court erred in its approach to the issue. Relying primarily on Hugel v. Corporation of Lloyd’s, 999 F.2d 206 (7th Cir. 1993), the defendants contend that the non-signatory defendants can be bound by the Franklin Manor clause only if- their “conduct is sufficiently related to the contract dispute that the [non-signatory] third party could foresee that.it would be bound by the contract.” Brief of Appellants at 19; see Hugel, 999 F.2d at 209 (“In ord.er to bind a non-party to. a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound.” (internal quotation marks omitted)). According to the defendants, the conduct of the Gabriel Manor and Crossings entities is entirely unrelated to any dispute about the provision of services under the Franklin Manor residency agreements, thus making it unforeseeable that the Gabriel Manor and Crossings entities would be bound by the Franklin Man- or contracts.
As a preliminary matter, we believe the defendants take'too, narrow a view of the circumstances under which a non-signatory may be. bound by the terms of contract executed by a third party. .As we have explained in the arbitration';context,[6] if “the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.” J.J. Ryan, 863 F.2d at 320-21. We have likewise explained that “[w]ell-established common law principles,” including estoppel and alter-ego theories, may bind a non-signatory to a contractual clause executed by a third party. Ini’l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000); see Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (“[T]ra- *680 ditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.” (internal quotation marks omitted)); Adams v. Raintree Vacation Exch., LLC, 702 F.3d 436, 441 (7th Cir. 2012) (“Piercing the veil remains a possible ground for enforcing a forum selection • clause against a party’s affiliate, if for example the corporation that signed the contract containing the clause was a mere shell .... ” (citation omitted)). Accordingly, there are several paths through which all defendants could be bound by the forum-selection clause included in the Franklin Manor residency agreements.
The defendants contend that the plaintiffs bear the burden of proving that all defendants were bound by the Franklin Manor forum-selection clause and that the contract therefore precluded removal. Because the plaintiffs presented no evidence supporting their alter-ego claim, the defendants argue that the plaintiffs failed to carry their burden and that the district court therefore erred by granting the motion for remand.
It is well established that the party removing a case to federal court bears the burden of establishing the court’s subject-matter jurisdiction over the case:
[Fjederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court’s jurisdiction over the matter. If a plaintiff files suit in state court and the defendant. seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court’s jurisdiction over the matter. While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only allege federal jurisdiction with a short plain statement— just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the burden of demonstrating that removal jurisdiction is proper.

Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296-97 (4th Cir. 2008) (citations omitted). Accordingly, the defendants, as the parties invoking the jurisdiction of the federal courts, were obligated to demonstrate the existence of subject-matter jurisdiction.
As previously noted, supra note 2, the defendants sufficiently established the existence of subject-matter jurisdiction under CAFA. By relying on the plaintiffs’ alter-ego allegations, the district court implicitly concluded that the defendants’ obligation to establish the propriety of removal also required them to show that they were not alter egos bound by the Franklin Manor residency agreements. We agree with the defendants that the district court erred by placing that burden on them.
"While the removing party must demonstrate that jurisdiction exists, a forum-selection clause has nothing to do with subject-matter jurisdiction. An enforceable clause prevents a court from exercising jurisdiction over a case that it would otherwise be authorized to hear, but the existence of the clause does not somehow negate the factual and legal bases establishing the court’s jurisdiction. See Lipcon v. Underwriters at Lloyd’s, London, 148 F.3d 1285, 1289 (11th Cir. 1998) (“[T]he basis upon which the defendants seek dismissal—namely, that the agreement of the parties prohibits the plaintiff *681 from bringing suit in the particular forum—is unrelated to the actual basis of federal subject matter jurisdiction—namely, federal question jurisdiction or diversity of citizenship.”). Thus, in the removal context, an enforceable forum-selection clause essentially operates as an affirmative defense to removal—subject-matter jurisdiction exists, but the forum-selection clause effects a waiver of the defendant’s right to ask the court to exercise that jurisdiction. The party asserting an affirmative defense bears the burden of proving it, see, e.g., Stonehenge Eng’g Corp. v. Emp’rs Ins. of Wausau, 201 F.3d 296, 302 (4th Cir. 2000), and we see little justification for a different procedure here.
In analogous situations, courts have concluded that where jurisdiction has been shown to exist, the burden rests on the plaintiff to provide a reason for a court to decline to exercise that jurisdiction. For example, in Breuer v. Jim’s Concrete of Brevard, Inc., 538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003), the Supreme Court considered 28 U.S.C. § 1441(a), the general removal statute, which authorizes removal of cases within the original jurisdiction of the district courts unless another statute expressly prohibits removal. The Court held that if “the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception.” 538 U.S. at 698, 123 S.Ct. 1882.
Similarly, CAFA itself establishes certain exceptions to the exercise of jurisdiction under the statute, spelling out the circumstances under which the district court may or must decline to exercise jurisdiction. See 28 U.S.C. § 1332(d)(3)-(5). Every circuit that has considered the issue has concluded that while the removing defendant bears the burden of showing that CAFA’s general jurisdictional requirements are satisfied, the plaintiff has the burden of showing the applicability of one of the exceptions. See Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) (“CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction. ... However, when a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, ... the party seeking remand bears the burden of proof with regard to that exception.”); accord Brinkley v. Monterey Fin. Servs., Inc., 873 F.3d 1118, 1121 (9th Cir. 2017); Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383, 389 (6th Cir. 2016); Woods v. Standard Ins. Co., 771 F.3d 1257, 1262 (10th Cir. 2014); Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir. 2010); In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 78 (1st Cir. 2009); Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009); Hart v. FedEx Ground Package Sys., Inc., 457 F.3d 675, 676 (7th Cir. 2006); Frazier v. Pioneer Americas LLC, 455 F.3d 542, 546 (5th Cir. 2006).
Accordingly, given the manner in which a forup-selection clause operates in the removal context, we believe that the plaintiff must bear the burden of demonstrating that the defendant waived its right to remove an otherwise removable case by agreeing to a forum-selection clause. In this case, although the plain language of the Franklin Manor forum-selection clause precludes removal, the question remains whether all of the Saber defendants are alter egos or otherwise bound by the clause. These questions are inherently factual, see DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 684 (4th Cir. 1976), but the district court made no findings of fact and instead simply accepted the plaintiffs’ allegations as true, implicitly placing the bur *682 den on the defendants to rebut the allegations, Because the district court placed the burden on the defendants rather than the plaintiffs, the , proper course is to vacate the court’s order and remand to allow the district court to reconsider the issue under the correct standard. Scott v. Cricket Commc’ns, LLC, 865 F.3d 189, 194 (4th Cir. 2017). (“When a district court fails to make .findings of fact because of an erroneous view of.the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings” (internal quotation marks omitted)). Given the nature of the alter-ego question, some amount of discovery .will likely be required to permit the plaintiffs to gather the evidence necessary to support their claim.[7]

V.
For the foregoing reasons, we hereby vacate the district court’s order and remand for reconsideration of the question of whether all of the Saber defendants are bound by the Franklin Manor forum-selection clause.

VACATED, AND REMANDED

. Murphy voluntarily dismissed her claims on October 25, 2016, and is no longer a party to this action.

. There is no real question that the district court had subject-matter jurisdiction over this case, CAFA confers jurisdiction over class actions in which the amount in controversy exceeds $5 million and in which "any member of a class of plaintiffs is a citizen of a State different from any defendant.” 28 U.S.C. § 1332(d)(2)(A) (emphasis added). Under CAFA, unincorporated associations—including limited liability companies—are citizens of the state under whose laws they are organized and of the state where their.principal place of business is located. See 28 U.S.C. § 1332(d)(10); Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 705 (4th Cir. 2010). Because the plaintiffs are North Carolina citizens, and Saber Healthcare Group, LLC, is a citizen only of Ohio, CAFA's minimal diversity requirements are met. As to the amount in controversy, the plaintiffs seek to recover the difference between the value of the services the defendants promised and the value of the services actually received, which they contend should be trebled under North Carolina's unfair trade practices act, see N.C. Gen. Stat. § 75-16. The defendants alleged in their notice of removal that over the time period addressed in the complaint, the three North Carolina facilities received more than $14 million in payments from residents. Because the plaintiffs do not challenge the defendants’ calculations, the defendants adequately established that the amount in controversy exceeds $5 million. See Dart Cherokee Basin Op. Co. v. Owens, — U.S. -, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014) ("A defendant’s notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.”).

. In light of this conclusion, we hereby deny as moot the defendants’ § 1453(c) petition *674 requesting permission to appeal the remand order.

. Plaintiff Claire Murphy was party to a contract with Gabriel Manor during her two-month stay there in early 2016. Although each facility requires each resident to sign a contract, see J.A. 155, the record does not include the contract signed by Murphy when she returned to Franklin Manor in April 2016. Nonetheless, the complaint alleges that each plaintiff signed a Franklin Manor residency agreement, see J.A. 44, and we must accept that allegation as true for purposes of this appeal. Since each agreement terminates upon the execution of a new one, J.A. 159, we must assume that Murphy's contract with Gabriel Manor terminated upon her execution of the Franklin Manor contract.

. Because the parties do not contend that there is any meaningful difference between state and federal law on the kind of conduct necessary to establish a waiver of a contractual right, we do not decide whether a claim of waiver of a forum-selection clause is governed by state or federal law.

. Since arbitration is, "in effect, a specialized kind of forum-selection clause,” Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L,Ed.2d 270 (1974), these principles are equally applicable to this case. <

. The plaintiffs contend that the state,court during the preliminary injunction proceedings found that the defendants were alter egos and that these findings of fact should be given binding effect by this court. We, disagree. Although the state court’s preliminary injunction older seems to treat the defendants as • alter egos, see J.A. 224-25, 231, we note that findings of fact made when granting a preliminary injunction are not binding at trial, see University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). In any event, the order was issued after the case was removed, which means that the order is void for our purposes. See Ackerman v. ExxonMobil Corp., 734 F.3d 237, 249 (4th Cir, 2013) (”[T]he [removal] statute deprives the state court of further jurisdiction over the removed case and ... any post-removal actions taken by the state court in the removed case action are void ab initio.").