PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES MARK MCDANIEL, JR.; DR.
C. RICHARD EPES,

       *Plaintiffs-Appellants,*

       v.

JOHN M. BLUST; EDWIN RAY
GATTON; DIRK W. SIEGMUND; IVEY,
MCCLELLAN, GATTON AND TALCOTT,
LLP,

       *Defendants-Appellees,*

       and

WILLIAM STANALAND, III,

       *Defendant.*

No. 10-1776

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., Chief District Judge.
(1:09-cv-00507-JAB-PTS)

Argued: December 9, 2011

Decided: February 9, 2012

Before TRAXLER, Chief Judge, and GREGORY and
WYNN, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge Gregory and Judge Wynn joined.

## COUNSEL

**ARGUED:** Douglas Stephen Harris, Greensboro, North Carolina, for Appellants. Jeffrey Edward Oleynik, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for Appellees. **ON BRIEF:** John W. Ormand III, Julia C. Ambrose, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Raleigh, North Carolina, for Appellees.

## OPINION

TRAXLER, Chief Judge:

James Mark McDaniel, Jr. and C. Richard Epes ("Appellants") appeal a district court order dismissing several of their claims in a suit regarding conduct that occurred during bankruptcy proceedings. Finding no error, we affirm.

### I.

Appellants filed this suit in Guilford County Superior Court, alleging several causes of action. Their complaint alleges that they are former officers of EBW Laser, Inc., a company that entered bankruptcy in 2005 in the Middle District of North Carolina. After the case was converted to Chapter 7, the court appointed attorney Charles Ivey as trustee. Ivey subsequently retained his firm, Ivey, McClellan, Gatton, Talcott, LLP ("IMGT"), to serve as his counsel and to prosecute an adversary proceeding ("the adversary proceeding") he had filed against Appellants. The adversary proceeding complaint alleged that Appellants had preferentially transferred or fraudulently conveyed property belonging to EBW Laser worth hundreds of thousands of dollars and had also engaged in breaches of fiduciary duty and unfair and deceptive trade practices.

Named as defendants in the present action are IMGT attorneys John M. Blust, Edwin R. Gatton, and Dirk Siegmund, as well as IMGT itself and CPA William Stanaland, III. The complaint alleges that during discovery for the adversary proceeding, Gatton presented documents to certain deponents that he claimed were tax returns of EBW Laser, Inc., when Gatton in fact knew or should have known that the documents were not EBW Laser's returns. The complaint further alleges that Gatton allowed expert witnesses to rely on these documents to conclude that Appellants had committed fraud in their capacity as EBW Laser's officers. On the basis of these allegations, Appellants asserted a cause of action for civil obstruction of justice.

The complaint also alleges that IMGT sought court orders to obtain McDaniel's personal income tax records twice during the adversary proceeding and that both times the bankruptcy court denied IMGT's request, ruling that the returns had no relevance to the proceeding. The complaint alleges that IMGT nevertheless was able to obtain McDaniel's returns for the 1997 through 2001 tax years without McDaniel's knowledge or permission and that Gatton refused McDaniel's request to return them. On this basis, the complaint asserts a cause of action for conversion.

Finally, the complaint alleges that IMGT's source for the aforementioned returns was Stanaland, who had himself obtained them from McDaniel to assist him in preparing McDaniel's 2002 tax returns. This allegation is the basis of claims for invasion of privacy, breach of fiduciary duty, and civil conspiracy.

Defendants Blust, Gatton, Siegmund, and IMGT ("the IMGT Defendants") removed the case to federal district court based on federal-question and bankruptcy jurisdiction. *See* 28 U.S.C. §§ 1331, 1334. They subsequently moved to dismiss the claims against them, *see* Fed. R. Civ. P. 12(b)(1), contending that, under the *Barton* doctrine, the district court lacked

subject-matter jurisdiction since Appellants had failed to obtain leave of the bankruptcy court that appointed Ivey to be trustee. *See Barton v. Barbour*, 104 U.S. 126 (1881). Appellants opposed the motion, denying that the *Barton* doctrine barred their action. Appellants further asked that the court remand the action to state court or abstain from hearing the case.

Defendant Stanaland also sought dismissal of the claims against him, asserting that the *Barton* doctrine barred the claims against him and that the claims failed to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(1), (6).

These motions were referred to a United States magistrate judge, who recommended granting the motion to dismiss the claims against the IMGT Defendants and remanding the claims against Stanaland to state court. Regarding the allegedly false returns, the magistrate judge concluded that "[i]t was within the context of the adversary proceeding which the trustee filed against [Appellants], and for which the IMGT firm and its attorneys were hired to represent the trustee, that the allegedly false corporate tax returns of EBW Laser, Inc. were presented and improperly relied upon to implicate [Appellants] in alleged wrongdoing." J.A. 300. Given that "[t]he prosecution of the trustee's adversary proceeding was a function properly within the scope of duties of the trustee's counsel," the judge determined that the *Barton* doctrine applied. J.A. 300.

Regarding the acts relating to the alleged improper receipt and possession of McDaniel's personal income tax returns, the judge noted that the "motive according to [Appellants] was to establish tax fraud by . . . McDaniel to bolster the trustee's contention that . . . McDaniel had created and engaged in the fraudulent scheme outlined in the complaint in the adversary proceeding." J.A. 301. The judge concluded that because "[p]roving the adversary action was a function within

the scope of duties of the trustee's counsel," the *Barton* doctrine applied to those actions as well. J.A. 301.

The district court adopted the magistrate judge's recommendation over Appellants' objections.

## II.

Appellants argue that the district court erred in dismissing their claims against the IMGT Defendants under the *Barton* doctrine. We disagree. *See JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 637 (4th Cir. 2010) (stating that we review de novo a district court's dismissal of a complaint for lack of subject-matter jurisdiction).

The Supreme Court established in *Barton* that before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver.[1] *See Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004). This principle has been extended to suits against bankruptcy trustees, *see id.*; *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 971 (9th Cir. 2005), and to suits against trustees' attorneys, *see Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006). To determine whether a complained-of act falls under the *Barton* doctrine, courts consider the nature of the function that the trustee or his counsel was performing during commission of the actions for which liability is sought. *See Heavrin v. Schilling (In re Triple S Rests., Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008). When trustees act "within the context" of their role of "recovering assets for the estate," leave must be obtained. *Id.* Acts are presumed to be part of the duties of the

---

[1]"[W]hile permission to prosecute an action against a trustee can involve discretion, such permission ordinarily should be granted unless it is clear that the claim is without foundation." *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975).

trustee or his counsel "unless Plaintiff initially alleges at the outset facts demonstrating otherwise." *In re Lowenbraun*, 453 F.3d at 322 (internal quotation marks omitted).[2]

The *Barton* doctrine serves the principle that a bankruptcy trustee "is an officer of the court that appoints him," and therefore that court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties." *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996). "Without the requirement [of obtaining leave], trusteeship w[ould] become a more irksome duty, and so it w[ould] be harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums, and this w[ould] make the administration of the bankruptcy laws more expensive." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). The doctrine also enables bankruptcy courts to monitor the work of the trustees they have appointed so that the courts may be fully informed when they make future appointments. *See id.*

A.

Appellants argue that the *Barton* doctrine does not apply to their claims because Ivey did not specifically direct the challenged actions and because the allegedly wrongful actions exceeded the scope of the IMGT Defendants' authority.

Initially, for the *Barton* doctrine to apply to a suit against a bankruptcy trustee's attorneys, we know of no reason why the trustee must have directed counsel to take the specific actions that are the subject of the suit. Nor do Appellants point to any case imposing such a requirement.

---

[2]28 U.S.C. § 959(a) provides a statutory exception to the *Barton* doctrine for suits challenging actions of trustees in "carrying on business connected with" the property of the estate. Appellants do not argue that this exception applies in this case.

Regarding the scope of the IMGT Defendants' authority, Ivey employed the IMGT Defendants to prosecute the adversary proceeding. Even assuming that the challenged actions were wrongful, Appellants do not seriously dispute that the actions were taken in the context of attempting to prove the adversary action. The allegations that the challenged conduct was wrongful, certainly not unexpected in a lawsuit, do not preclude application of the *Barton* doctrine. Such allegations can be considered by the bankruptcy court both in its role as gatekeeper, *see In re Lehal Realty Assocs.*, 101 F.3d at 276, and in the context of gathering information that may shape its future appointments, *see In re Linton*, 136 F.3d at 545.

We note that the result we reach in this case is similar to one reached by the Sixth Circuit on similar facts. *See In re Triple S Rests., Inc.*, 519 F.3d at 578. In that case, Schilling was appointed trustee when a company went bankrupt. He sought to obtain through the bankruptcy court some money from Heavrin and threatened to report Heavrin to the United States Attorney for particular criminal charges if he did not pay the money in settlement. Heavrin filed suit against Schilling in state court asserting state-law claims; the case was removed to federal bankruptcy court under the *Barton* doctrine. Schilling moved to dismiss and for sanctions under Rule 11. The bankruptcy court granted both motions, and the district court affirmed.

On appeal to the Sixth Circuit, Heavrin contended "that Schilling was not acting in his official capacity when he stated he would refer the matter for criminal investigation if Heavrin would not agree to the settlement, and therefore the *Barton* doctrine does not apply." *Id.* at 578. The Sixth Circuit acknowledged that Heavrin was suggesting that "Schilling necessarily acted outside the scope of his authority as a trustee" by wrongfully "suggesting he might breach his duty to report a criminal violation relating to the bankruptcy" if Heavrin agreed to the settlement. *Id.* However, "[b]ecause the negotiations were within the context of recovering assets for

the estate," the Sixth Circuit concluded that the bankruptcy court's determination that Schilling acted within the scope of his authority as trustee was not clearly erroneous. *Id.*

## B.

Appellants offer an additional argument for their position that the *Barton* doctrine does not bar their claim regarding the allegedly false tax returns of EBW Laser. They contend that their allegations of intentional misconduct, and fraud in particular, necessarily make the *Barton* doctrine inapplicable.[3] However, bankruptcy trustees and their counsel require protection against suits that are based on unfounded allegations regardless of whether there is a claim that the alleged wrongdoing was intentional. *See, e.g.*, *In re Linton*, 136 F.3d at 544-46 (holding leave was required for malicious prosecution suit against trustee alleging that trustee "had known from the outset that the adversary proceeding had no merit"). And, the need for bankruptcy courts to be "kept in the loop" so that they make appropriate appointments in the future is arguably even greater when intentional misconduct has occurred. We therefore conclude that the district court properly dismissed this claim as well.

## III.

In sum, because we conclude that the district court properly applied the *Barton* doctrine, we affirm the district court's order.

*AFFIRMED*

---

[3]Many of the cases Appellants cite in support of their argument actually pertain to the question of whether trustees are entitled to immunity, a question not before us today.